IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Timothy C. Garnett, | : | |
| Petitioner | : | Civil Action 2:11-cv-00765 |
| v. | : | Judge Frost |
| Warden, Noble Correctional Institution, | : | Magistrate Judge Abel |
| | : | |
| Respondent | | |

**Report and Recommendation**

Petitioner Timothy C. Garnett, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Magistrate Judge on petitioner's August 30, 2011 petitioner for writ of habeas corpus (doc. 4).

I.  **Background and Procedural History**

In May 2009, Garnett was indicted by Franklin County, Ohio Grand Jury on one count of carrying a concealed weapon in violation of Ohio Revised Code § 2923.12, one count of improperly handling firearms in a motor vehicle in violation of Ohio Revised Code § 2923.16, and one count of having a weapon while under disability in violation of Ohio Revised Code § 2923.13. Garnett pled not guilty to the charges in the indictment.

Prior to trial, Garnett filed a motion to suppress the fruits of an unconstitutional arrest and to suppress statements made to law enforcement officers and/or agents, and to suppress any evidence obtained from the disclosure of the statements. On October 9,

1

2009, Garnett filed a supplemental motion to suppress evidence obtained by law enforcement officers during their search. On November 9, 2009, Garnett filed a motion in limine for an order suppressing statements, or in the alternative, for an order prohibiting the state from introducing certain statements made by him. The trial court held hearings on the motions. The suppression motions were denied, and the motion in limine was preliminarily overruled. The trial court reserved further ruling on the motion in limine upon the presentation of the testimony and evidence,

The jury found Garnett guilty as charged in the indictment. On November 20, 2009, Garnett was sentenced to an aggregate term of four years to be served consecutively to a community control revocation in a prior case.

Petitioner asserts the following grounds for relief:

Ground one: Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

Supporting Facts: Officer didn't have probable cause to stop petitioner for a traffic violation, but was operating on a hunch. Officer then used phantom traffic violation to interrogate and search petitioners vehicle for contraband.

Ground two: Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

Supporting facts: Officer subjected petitioner to unconstitutional interrogation then violated petitioner by searching vehicle and using contraband at court to conviction petitioner.

Ground three: Conviction obtained by a violation of the privilege against self incrimination.

2

> Supporting facts: Officer didn't inform petitioner of his Miranda rights but interrogated petitioner and used info from unlawful detention to convict petitioner by using his pre Miranda phone conversation to secure conviction.

Doc. 4 at 4-5.

The Court of Appeals of Ohio, Tenth District, Franklin County, set forth the facts of this case on direct appeal in case number 09AP-1149. The factual findings "shall be presumed to be correct." 28 U.S.C. § 2254(e). Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

> {¶ 3} On [January 31, 2009], Officer Ian Pruitt ("Pruitt"), a patrol officer with the Columbus Division of Police, was sitting in his police cruiser across from the Easy Mart at Karl Road and Shanley Drive. He observed appellant go into the Easy Mart and exit a few minutes later without having made a purchase. Pruitt's suspicions were aroused because narcotic sales involving the Easy Mart had been reported. Pruitt watched as appellant got into his vehicle and pulled out of the Easy Mart's lot onto Shanley Drive. Appellant, however, did not use a turn signal.
>
> {¶ 4} Pruitt turned on his beacons, which activated the automatic video camera system for his cruiser. Pruitt followed appellant for approximately 100 yards before appellant pulled into the parking lot of a bar and stopped. Pruitt approached appellant's vehicle, which was revealed to belong to Tiffani Hardin ("Hardin"), appellant's girlfriend. Upon learning from appellant that his driver's license was suspended, Pruitt patted appellant down and placed him in the back of the cruiser. Pruitt called police dispatch, which verified that appellant's license was suspended and also informed Pruitt that appellant had an outstanding warrant for his arrest. Pruitt testified that he then read appellant his Miranda rights.
>
> {¶ 5} Pruitt advised appellant that he was "supposed" to take appellant to jail, tow the vehicle, and issue appellant a ticket. (Tr. 21.) Pruitt advised appellant that he was going to "look" in his car and asked appellant if he had any drugs or weapons in the car. (Tr. 22.) Appellant denied having any drugs or weapons but did state that his girlfriend had a gun. Pruitt asked appellant if he knew where the gun was; appellant replied that he

did not. Pruitt then searched the vehicle and discovered a gun in a bag located behind the driver's seat. Pruitt testified that he conducted the search because the vehicle was "subject to impound." (Tr. 23.)

{¶ 6} While Pruitt was searching the vehicle, appellant was in the back of the cruiser, talking on his cell phone. Because the automatic video camera system for Pruitt's cruiser was activated, appellant's conversation was recorded. Appellant called his girlfriend, and can be heard telling her, "[b]ut I don't have the gun on me. It's probably in the car inside my bag." (Tr. 23–24.) Appellant can also be heard asking her, "[w]ell, will you just tell him it's just yours for me?" (Tr. 24.) Appellant also told his girlfriend, "[j]ust tell them that you have a black Glock." (Tr. 24–25.) Appellant had been watching Pruitt while he was talking on the phone and saw when Pruitt found the gun.

{¶ 7} After finding the gun, Pruitt approached appellant, and they conversed for several minutes. During their conversation, appellant repeatedly denied that the gun was his and pleaded with Pruitt not to arrest him. Two additional officers appeared on the scene and began "inventorying the vehicle subject to impound." (Tr. 49.)

{¶ 8} Pruitt testified that he found the gun in a bag behind the driver's seat. He also explained that because the car was subject to impound, safety concerns dictated that the car be searched. Regarding the search, Pruitt testified that it was the policy of the Columbus Police Department to search a vehicle, as well as the contents of the vehicle, when a vehicle is to be impounded. Pruitt stated that the policy is in place for safety reasons, as well as to guard against claims that personal items went missing from a vehicle after impound.

{¶ 9} Pruitt charged appellant with a violation of Columbus City Code section 2131.14(a) and for driving without a license.

{¶ 10} The trial court denied appellant's motions to suppress, and the matter proceeded to trial. A jury found appellant guilty of carrying a concealed weapon, improper handling of a firearm in a motor vehicle, and having a weapon under disability. The trial court sentenced appellant to 18 months of imprisonment on the carrying a concealed weapon and improper handling counts, and a four-year sentence on the weapon under disability count, to be served concurrently with each but consecutive to a sentence imposed on another case due to the revocation of judicial release.

*State v. Timothy C. Garnett,* 2010 WL 4925844 at *1-2 (Ohio Ct. App. 10th District Dec. 2, 2010).

## II. Discussion

Garnett timely filed his petition. He properly exhausted his claims, and none of his claims were procedurally defaulted. As a result, the merits of petitioner's claims must be examined.

### A. Fourth Amendment

In *Stone v. Powell,* 428 U.S. 465, 481-82 (1976), the United States Supreme Court held: " where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Except under extremely limited circumstances, *Stone v. Powell* precludes habeas corpus review of alleged Fourth Amendment violations.

The Sixth Circuit has "set forth two distinct inquiries a court must perform when determining whether a petitioner may raise a claim of illegal arrest in a habeas action." *Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir.2000) (citing *Riley v. Gray,* 674 F.2d 522 (6th Cir.1982)).

> First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was

> in fact frustrated because of a failure of that mechanism." *Id.* at 526.

*Machacek*, 213 F.3d at 952. *See also Harding v. Russell*, 156 Fed.Appx. 740, 745 (6th Cir.2005); *Crump v. LeCureux,* No. 92-1027, 974 F.2d 1338, 1992 WL 214521, at *3 (6th Cir. Sep. 3, 1992). The Sixth Circuit has held that Ohio, by providing for the filing of a pretrial motion to suppress and the opportunity to take a direct appeal from any ruling denying a motion to suppress, has in place a state procedural mechanism that presents the opportunity for full and fair litigation of a Fourth Amendment claim. *Riley v. Gray,* 674 F.2d at 526; *see also Harding v. Russell,* 156 Fed.Appx. at 745; *Seymour v. Walker,* 224 F.3d 542, 553 (6th Cir.2000). Further, the record fails to reflect that the presentation of petitioner's Fourth Amendment claim was frustrated by any failure of Ohio's procedural mechanism. Here, the court of appeals fully considered his claim that his Fourth Amendment right had been violated:

> {¶ 12} Appellant argues in his first assignment of error that the trial court erred when it denied his motion to suppress the evidence of the gun found in the vehicle that appellant was driving.
>
> {¶ 13} Appellate review of the denial of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 797 N.E.2d 71, 2003–Ohio–5372, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Carter*, 72 Ohio St.3d 545, 552, 651 N.E.2d 965, 1995–Ohio–104; *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, when reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. Burnside at ¶ 8. However, an appellate court reviews de novo whether the trial court's conclusions of law, based on those findings of fact, are correct. *State v. Anderson* (1995),

100 Ohio App.3d 688, 691, 654 N.E.2d 1034; *State v. McClendon*, 10th Dist. No. 09AP–554, 2009–Ohio–6421. In this case, appellant does not challenge any factual findings made by the trial court. Appellant contends that the trial court's legal conclusions were wrong. Thus, we must independently review whether those legal conclusions are correct.

{¶ 14} Appellant contends that the search of the vehicle was unconstitutional, and, as such, the trial court erred in denying his motion to suppress. Appellant advances three bases for this argument: (1) Pruitt's search of the vehicle was unconstitutional because there was no basis to stop appellant; (2) *Arizona v. Gant* (2009), --- U.S. ----, 129 S.Ct. 1710, 173 L.Ed.2d 485, renders Pruitt's search unconstitutional; and (3) Pruitt's search was not part of an inventory search because he searched the vehicle prior to the inventory.

The Basis for the Stop
{¶ 15} A law enforcement officer may stop an individual when he has reasonable suspicion that criminal activity is afoot. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Lloyd* (1998), 126 Ohio App.3d 95, 102, 709 N.E.2d 913. Reasonable suspicion exists in traffic stops where a police officer has observed a traffic violation. Columbus v. Dials, 10th Dist. No. 04AP–1099, 2005–Ohio–6305, ¶ 21. Consequently, traffic stops based on observation by a police officer of a traffic violation are constitutionally permissible. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11–12, 665 N.E.2d 1091, 1996–Ohio–431 (where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, the stop is constitutionally valid).

{¶ 16} Here, Pruitt cited appellant for a violation of Columbus City Code section 2131.14(a), which provides:

> No person shall turn a vehicle or move right or left upon a street or highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.
>
> When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning, except that in the case of a person operating a bicycle, the signal shall be

made not less than one time but is not required to be continuous. * * *

No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give a signal.

Any stop or turn signal required by this section shall be given either by means of the hand and arm, or by signal lights that clearly indicate to both approaching and following traffic intention to turn or move right or left[.]

{¶ 17} Appellant does not dispute that he failed to use a turn signal when he turned left onto Shanley Drive from the Easy Mart parking lot. What he does dispute, however, is whether he was legally required to use a turn signal. According to appellant, he did not violate Columbus City Code section 2131.14(a) because he did not change lanes or turn from one street onto another, but, rather, he turned from private property onto a street. As such, appellant argues that because he was not guilty of violating the above provision, "Pruitt lacked any constitutionally valid basis for stopping the vehicle Appellant operated." (Appellant's brief at 7.)

{¶ 18} Whether or not appellant's failure to use his turn signal constituted an actual violation is not essential to our analysis. Pruitt testified that he observed appellant turn onto Shanley Drive without using his turn signal, which he believed was a violation of Columbus City Code section 2131.14. "Under limited circumstances, courts have held that the exclusionary rule may be avoided with respect to evidence obtained in a stop based on conduct that a police officer reasonably, but mistakenly, believes is a violation of the law." *State v. Gunzenhauser*, 5th Dist. No. 09–CA–21, 2010–Ohio–761, ¶ 16, citing *City of Wilmington v. Conner* (2001), 144 Ohio App.3d 735, 740, 761 N.E.2d 663, citing *State v. Greer* (1996), 114 Ohio App.3d 299, 300–01, 683 N.E.2d 82. And, here, we would find that Pruitt could reasonably have believed that appellant violated Columbus City Code section 2131.14.

{¶ 19} Additionally, appellant's outstanding warrant constituted an independent justification for the stop. *See, e.g., State v. Harding*, 180 Ohio App.3d 497, 905 N.E.2d 1289, 2009–Ohio–59, ¶ 18, citing *State v. Smith*, 2d Dist. No. 22434, 2008–Ohio–5523, ¶ 11 ("[Defendant] had no reasonable

expectation of privacy in being free from being stopped arbitrarily by the police since the police were authorized and directed by an Indiana court to arrest him. A search conducted incident to that arrest would have disclosed the guns and drugs recovered by the police.").

The applicability of *Arizona v. Gant*
{¶ 20} In *Gant*, the United States Supreme Court held that:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

*Id*. at 129 S.Ct. at 1723–24.

{¶ 21} Relying upon *Gant*, appellant asserts that Pruitt's search was invalid because he was "under arrest and locked in the back of [the] cruiser at the time Pruitt searched the vehicle and discovered the gun." (Appellant's brief at 7.) Thus, according to appellant, the search cannot be justified as incident to arrest for driving under a suspended license or pursuant to the outstanding warrant.

{¶ 22} The State of Ohio ("the state") argues that, at the time, Pruitt's search of appellant's vehicle was a valid search incident to arrest. The state explains that the search in this case occurred almost three months before *Gant* was decided, and the controlling case law at that time was *State v. Murrell*, 94 Ohio St.3d 489, 764 N.E.2d 986, 2002–Ohio–1483, which held that a police officer who has made a lawful custodial arrest of an individual may search the passenger compartment of his automobile as a "contemporaneous incident of that arrest." *Id*. at syllabus. Thus, according to the state, the search was valid because it was "consistent with then-existing Ohio Supreme Court precedent." (State's brief at 13.)

{¶ 23} The Supreme Court in Gant recognized that, even if a search incident to arrest was not justified, the other established exceptions to the warrant requirement might nevertheless apply. *Id*. On such exception, unaffected by *Gant*, is the inventory search exception.

9

The Inventory Search

{¶ 24} Appellant concedes that an inventory search of an impounded vehicle is a well-recognized exception to the warrant requirement but argues that Pruitt "searched the vehicle before the inventory ever began." (Appellant's brief at 8.) Thus, he contends, the search was invalid.

{¶ 25} The "inventory search" is an exception to the warrant requirement of the Fourth Amendment to the United States Constitution. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889. Constitutionally permissible inventory searches of lawfully impounded vehicles are done "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine* (1987), 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739; *S. Dakota v. Opperman* (1976), 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000. It is well-settled that a lawful inventory search can be conducted prior to a vehicle being impounded. *State v. Jackson*, 2d Dist. No. 24463, 2009–Ohio–4336, citing *State v. Peagler*, 76 Ohio St.3d 496, 501–02, 668 N.E.2d 489, 1996–Ohio–73; *Bertine*, *supra*.

{¶ 26} Here, Pruitt testified that he searched the vehicle, looking for marijuana or guns because the vehicle was going to be impounded. (Tr. 47, 51.) After finding the gun, which was located in a bag behind the driver's seat, two additional officers arrived at the scene to inventory the vehicle "subject to impound." (Tr. 49.) Pruitt testified that Columbus Police Department procedure required that everything in the vehicle be searched. Questioning by appellant's counsel regarding the search and why Pruitt looked in the bag (which contained the gun), elicited the following:

> Q. Behind the driver's seat, okay. Why did you look in the bag?
>
> A. Well, that car was going to get turned in. And so at least four or five different people were going to have to go through it, not to mention the impound officer, the person who comes to tow, the wrecker driver. So, it wouldn't be very good if somebody were to stick their hands in there and end up discharging a firearm.
>
> Q. You were looking for a gun or marijuana?

> A. I was gong to have to look through that car to inventory. I wanted to make sure that I didn't stick my hand in something that I was going to end up losing a finger.

(Tr. 50–51.)

> {¶ 27} Based upon the facts before us, we find the gun was discovered pursuant to a valid inventory search. Even if we were to accept appellant's argument that Pruitt's search was not an inventory search, we would still find that the inevitable discovery rule would apply. That rule states, "illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Perkins* (1985), 18 Ohio St.3d 193, 196, 480 N.E.2d 763; *see also State v. Nash*, 5th Dist. No.2005CA00305, 2006–Ohio6396, ¶ 24. The gun in appellant's vehicle would have been discovered by the two officers that arrived at the scene to conduct an inventory search prior to impoundment.
>
> Conclusion
> {¶ 28} Based on the foregoing, we overrule appellant's first assignment of error.

*State v. Timothy C. Garnett,* 2010 WL 4925844 at *2-6 (Ohio Ct. App. 10th District Dec. 2, 2010). I conclude that Garnett's claims based on the Fourth Amendment are not cognizable in habeas corpus.

## B.   Fifth Amendment

A court's evaluation of whether a petitioner is entitled to federal habeas relief is governed by an amendment to 28 U.S.C. § 2254, enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d). The statute further states:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e).

With respect to petitioner's claim that his *Miranda* rights were violated, the court of appeals stated:

> {¶ 29} In his second assignment of error, appellant argues that the trial court erred when it denied his motion to suppress the statements he made to Pruitt. Specifically, appellant contends that Pruitt failed to apprise him of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, at the time Pruitt engaged him in a discussion when he was seated in the back of the cruiser. Thus, appellant contends that any statements he may have made during the interview were obtained in derogation of Miranda and must therefore be suppressed.
>
> {¶ 30} *Miranda* warnings are required only when a suspect is subjected to custodial interrogation. The *Miranda* court defined custodial interrogation

12

as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*, 384 U.S. at 444, 86 S.Ct. at 1612. "A person is considered in custody for purposes of Miranda when he is placed under formal arrest or his freedom of action is restrained to a degree associated with a formal arrest." *State v. Simpson*, 10th Dist. No. 01AP–757, 2002–Ohio–3717, ¶ 33, citing Minnesota v. Murphy (1984), 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409. "In judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.' " *State v. Gumm*, 73 Ohio St.3d 413, 429, 653 N.E.2d 253, 1995–Ohio–24, quoting *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497.

{¶ 31} The state concedes that appellant was in custody at the time Pruitt asked him if there were any guns in the vehicle. The state, however, argues that appellant's statements are admissible under the public safety exception to Miranda. The state also contends that even if the public safety exception did not apply, the admission of appellant's statements still had no effect on the ultimate outcome of appellant's trial, and, therefore, admission was harmless.

The Public Safety Exception
{¶ 32} " 'The public safety exception allows the police, under certain circumstances, to temporarily forgo advising a suspect of his Miranda rights in order to ask questions necessary to securing their own immediate safety or the public's safety.' " *State v. Strozier*, 172 Ohio App.3d 780, 876 N.E.2d 1304, 2007–Ohio–4575, ¶ 23, quoting *State v. Santiago* (Mar. 13, 2002), 9th Dist. No. 01 CA 7798, 2002–Ohio–1114. " 'In order to establish that the exception is warranted in any given case, the State must show that: (1) there was an objectively reasonable need to protect the police or the public, (2) from an immediate danger, (3) associated with a weapon, and that (4) the questions asked were related to that danger and reasonably necessary to secure public safety.' " (Emphasis sic.) *State v. Nelson*, 2d Dist. No. 22718, 2009–Ohio–2546, quoting *State v. Jergens* (Sept. 3, 1993), 2d Dist. No. 13294; *Strozier* at ¶ 25.

{¶ 33} Regarding this exception, it is well-established that the Miranda warnings need not be strictly adhered to in situations when police officers are reasonably prompted to ask questions where public safety is at issue. *See Oregon v. Mathiason* (1977), 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50

13

L.Ed.2d 714; *California v. Beheler* (1983), 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275; and *New York v. Quarles* (1984), 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550.

{¶ 34} In this case, it is clear from Pruitt's exchange with appellant that safety was the basis for his questioning appellant about whether or not there were any guns in the vehicle. Although appellant denied that he, personally, had any guns in the car, appellant subsequently stated that his girlfriend, who owned the vehicle, had a gun and that appellant did not know whether or not it was in the car. (Tr. 20, 22.) Pruitt testified that the car was going to be impounded and that several people would be "going to have to go through" the vehicle. (Tr. 51.) Pruitt's testimony demonstrates a credible concern for safety, both his and that of the other individuals that would be inventorying and towing the vehicle. In other words, contained in the record is an objectively reasonable need to protect the public from an immediate danger from a weapon. Under these circumstances, we find that the questions posed by Pruitt to appellant regarding the existence of a gun in the vehicle falls under the public safety exception to the Miranda rule.

Harmless Error
{¶ 35} An error in the admission of evidence is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt. *State v. Williams* (1983), 6 Ohio St.3d 281, 452 N.E.2d 1323.

{¶ 36} Here, appellant denied that he had any guns in the vehicle. And although he subsequently told Pruitt that his girlfriend had a gun and he did not know if it was in the car, we agree with the state that appellant's statements were not facially incriminating. (Tr. 20, 22.) Moreover, even without appellant's statements to Pruitt, the remaining evidence would have been enough to convict appellant. The jury heard appellant's conversation with Hardin while he was seated in the back of the cruiser, in which appellant could be heard telling Hardin that the gun was "probably in the car inside [his bag]," and pleading with Hardin to tell the police that the gun was hers. (Tr. 24–25.) At trial, Hardin testified that she did not own a gun, the gun found in her vehicle did not belong to her, and that she had previously seen appellant with a black firearm. (Tr. 111–14, 123.)

> {¶ 37} Based on the above, we agree with the state that, even if the admission of appellant's statements were error, such error was harmless. *State v. Tolliver*, 10th Dist. No. 02AP–811, 2004–Ohio–1603, ¶ 67, quoting *State v. Edgell* (1972), 30 Ohio St.2d 103, 283 N.E.2d 145, paragraph three of the syllabus ("The use of a statement against an accused taken in transgression of *Miranda* may be found to be harmless error under the rule of *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.")
>
> Conclusion
> {¶ 38} Based on the foregoing, we find appellant's statements to Pruitt were admissible under the public safety exception to Miranda. Even if the admission of those statements were error, such error was harmless. Accordingly, we overrule appellant's second assignment of error.

*State v. Timothy C. Garnett,* 2010 WL 4925844 at *6-8(Ohio Ct. App. 10th District Dec. 2, 2010). The court of appeals properly considered whether the application of public safety exception to *Miranda* was warranted. The court considered the officer's question to petitioner concerning whether there were any guns in the vehicle. Petitioner denied having any guns, but he offered the statement that his girlfriend, who owned the vehicle, had a gun and that he did not know whether it was in the vehicle. The officer informed petitioner that the vehicle would be impounded and several people would inventory its contents. The appellate court determined that the officer's testimony demonstrated a credible concern for safety and that his questions to petitioner were within the public safety exception to the *Miranda* rule. In the alternative, the appellate court determined that error concerning the admission of his statement was harmless given the overwhelming proof of petitioner's guilt. The jury heard petitioner's telephone conversation with his girlfriend, Ms. Hardin, when he was in the back of the cruiser. Petitioner asked her to tell the police that the gun was hers. At trial, Ms. Hardin

15

testified that the gun was not hers and that she had previously seen petitioner with the gun.

Here, the state appellate court properly applied federal law when determining that petitioner's *Miranda* rights were not violated. Under 28 U.S.C. § 2254(d), the Ohio Court of Appeals' decision is binding on this federal habeas corpus court because it was not contrary to nor an unreasonable application of clearly established federal law. Accordingly, I conclude that this claim is without merit.

For the reasons stated above, I RECOMMEND that the petition be DISMISSED. Petitioner's August 23, 2011 motion for stay of execution on habeas corpus proceeding until his state motion for relief from judgment is fully exhausted (doc. 2) is DENIED as MOOT.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373,

380 (6th Cir. 1995). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/ Mark R. Abel<br>
United States Magistrate Judge